UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IAN MONTGOMERY M.,[1] | Case No. 4:22-cv-00450-DKG |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MARTIN J. O' MALLEY, Commissioner of Social Security Administration,[2] | |
| Defendant. | |

## INTRODUCTION

Plaintiff filed a Complaint with this Court seeking judicial review of the Commissioner's denial of his application for Title XVI Supplemental Security Income. (Dkt. 1). The matter is fully briefed and at issue. (Dkt. 14, 15, 16). Having carefully reviewed the parties' memoranda and the entire administrative record (AR), the Court will affirm the decision of the Commissioner for the reasons set forth below.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Martin J. O'Malley is substituted for Kilolo Kijakazi pursuant to Federal Rule of Civil Procedure 25(d). O'Malley became the Commissioner of Social Security Administration on December 20, 2023.

## BACKGROUND

On July 19, 2018, Plaintiff filed an application for Title XVI Supplemental Security Income, alleging disability beginning on April 1, 2008, due to attention deficit hyperactivity disorder ("ADHD"), autism, executive function disorder, sleep apnea, anxiety, depression, oppositional defiance disorder, incline resistance, and scoliosis. (Dkt. 14). Plaintiff later amended his alleged onset date to July 19, 2018. (Dkt. 14).

Plaintiff's claim was denied initially on November 26, 2018, and again upon reconsideration December 20, 2018. (Dkt. 14). A hearing was held on February 24, 2020, after which Administrative Law Judge ("ALJ") Christel Ambuehl issued an unfavorable decision on April 17, 2020. (Dkt. 14). Plaintiff appealed the ALJ's decision, and pursuant to a remand from the United States District Court for the District of Idaho, the Appeals Council ordered a remand on January 19, 2022. (AR 557; Dkt. 14).

A second hearing was conducted on August 4, 2022, before Administrative Law Judge (ALJ) Stephen Marchioro.[3] After considering testimony from Plaintiff, an impartial medical expert, and a vocational expert, on August 23, 2022, the ALJ issued a written decision finding Plaintiff not disabled. (AR 557-80). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision final. *See* 42 U.S.C. § 405(h). Plaintiff timely filed this action seeking judicial review of the ALJ's decision. (Dkt. 1). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

---

[3] The hearing was conducted by video teleconference due to the Coronavirus Pandemic of 2019 (COVID-19). (AR 557).

On the date the application was filed, Plaintiff was eighteen years of age. (AR 578). Plaintiff has at least a high school education. He has no past relevant work. (AR 578).

## THE ALJ DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential process in determining whether a person is disabled or continues to be disabled within the meaning of the Social Security Act (SSA). *See* 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.994(b)(5).

Here, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 560). The ALJ noted that Plaintiff testified he had worked for a furniture store from May 2021-November 2021, and that he recently started a job at Albertson's. (AR 560). Plaintiff also performed seasonal farm work from May 2014 through August 2018. (AR 560). However, the ALJ found that the reported earnings since the alleged onset date were not substantial gainful activity because the monthly earnings were well-below the guidelines set forth in the earnings tables for work performed at the substantial gainful level. (AR 560); 20 C.F.R. § 416.974(b); POMS DI 10501.015. However, the ALJ notes that in accordance with 20 C.F.R. § 416.971, "[e]ven

if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did." (AR 561).

At step two, the ALJ determined Plaintiff suffers from the following medically determinable severe impairments: ADHD and autism spectrum disorder. (AR 561). The ALJ found that Plaintiff's obesity, asthma, mild obstructive sleep apnea, tachycardia, major depressive disorder, and oppositional defiant disorder are non-severe. (AR 561-62). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (AR 563-65).

The ALJ next found Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following non-exertional limitations: Plaintiff is limited to simple, routine tasks with few, if any, changes in the work setting, precluded from work at a production rate pace, e.g., assembly work, limited to no more than occasional interaction with the public, and if the work duties or setting changes, he will need a brief period, i.e., up to two weeks, to adapt before working alone without supervision . (AR 565).

At step four, the ALJ concluded that transferability of job skills is not an issue because Plaintiff does not have past relevant work. (AR 578). At step five, relying on testimony from the vocational expert, the ALJ found at that there are jobs that exist in the national economy that Plaintiff could perform considering his age, education, work experience, and RFC, including industrial sweeper/cleaner, laundry laborer, and furniture

cleaner. (AR 578-79). The ALJ therefore determined Plaintiff was not disabled. (AR 579).

## ISSUE FOR REVIEW

1. Whether the ALJ properly evaluated the medical opinion evidence of Daniel Lloyd, LSW, and Katherine Gabbitas, LMSW.

## STANDARD OF REVIEW

The Court must uphold an ALJ's decision unless: 1) the decision is based on legal error, or 2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance of evidence. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

In making its determination, the Court considers the administrative record as a whole, weighing both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). The Court considers only the reasoning and actual findings identified by the ALJ and may not affirm for a different reason or based on post hoc rationalizations attempting to infer what the ALJ may have concluded. *Id.* at 1010; *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

If the ALJ's decision is based on a rational interpretation of conflicting evidence,

the Court must uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008). The Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999). The Court will not reverse the ALJ's decision if it is based on harmless error, which exists where the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal marks and citations omitted); *see also Molina v. Astrue*, 674 F.3d 1104, 1117–1122 (9th Cir. 2012).

## DISCUSSION

### 1.   Medical Opinion Evidence

#### a.  Legal Standard

Under the regulations governing an ALJ's evaluation of medical opinion evidence for claims filed on or after March 27, 2017, such as here, the ALJ is not required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 416.920c; *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs no longer need to "provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion."). Instead, the ALJ evaluates the persuasiveness of the opinions based on several factors. 20 C.F.R. § 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(5). The most important factors in the evaluation process are supportability and consistency. 20 C.F.R. § 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant ... objective medical evidence.'" *Woods*, 32 F.4th at 791-792 (quoting 20 C.F.R. § 416.920c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent ... with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. (quoting 20 C.F.R. § 416.920c(c)(2)).

Under this framework, the ALJ is required to articulate how persuasive they find the evidence and explain how the supportability and consistency factors were considered. 20 C.F.R. § 416.920c(b)(2). The ALJ may, but is not required to, explain how the other persuasive factors in paragraphs (c)(3) through (c)(5) were considered. 20 C.F.R. § 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 416.920c(b)(3). The ALJ's persuasiveness determination under the revised regulations must be supported by substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

With the above considerations in mind, the Court now turns to the ALJ's evaluation of the medical opinions.

### b.  Lloyd and Gabbitas' Medical Opinions

Daniel Lloyd, LSW, conducted Plaintiff's Adaptive Behavior Testing on February 28, 2018. (AR 412). Plaintiff's adaptive behavior was evaluated using the Scales of

Independent Behavior – Revised (SIB-R), which measures overall adaptive behavior based on an average of four different areas of adaptive functioning: motor skills, social interaction and communication skills, personal living skills, and community living skills. (AR 412). The respondent on the exam report is listed as Plaintiff's mother. (AR 412). Lloyd opined that Plaintiff's broad independence, the overall measure of adaptive behavior, to be comparable to that of the average individual at age 7 years 3 months. (AR 414). Lloyd found Plaintiff's functional independence limited to very limited. (AR 414). Lloyd stated that Plaintiff's community living skills were limited, his motor skills are limited to very limited, his social interaction, communication skills, and personal living skills are very limited. (AR 414). He further stated that Plaintiff has limitations in fourteen adaptive skill areas, including: gross-motor skills, fine-motor skills, social interaction, language comprehension, language expression, eating and meal preparation, toileting, dressing, personal self-care, domestic skills, time and punctuality, money and value, work skills, and home/community orientation. (AR 414). Lloyd noted Plaintiff's greatest strengths include community living skills, while his lowest scores include social interaction and communication skills. (AR 414). He opined that Plaintiff demonstrates serious problem behaviors and internalized maladaptive behaviors, while demonstrating moderately serious asocial maladaptive and externalized maladaptive behaviors. (AR 414). Finally, Lloyd concluded that Plaintiff would need frequent support, much more than others his age, because of limited to very limited adaptive behaviors and because of problem behaviors. (AR 414).

Katherine Gabbitas, LMSW, conducted an Adaptive Behavior Test on Plaintiff on August 24, 2020. (AR 972). Plaintiff's adaptive behavior was again evaluated using the Scales of Independent Behavior – Revised (SIB-R). (AR 972). Similarly, in this assessment, the respondent is listed as Plaintiff's mother. (AR 972). Gabbitas stated that Plaintiff's broad independence is comparable to that of the average individual at age 6 years and 6 months, and his functional independence is very limited. (AR 974). Gabbitas opined that Plaintiff's motor skills are very limited, his social interaction, communication skills, and community living skills are very limited, and his personal living skills are very limited to negligible. (AR 974). She further opined that Plaintiff has limitations in the fourteen following adaptive skill areas: gross-motor skills, fine-motor skills, social interaction, language comprehension, language expression, eating and mealtime preparation, toileting, dressing, personal self-care, domestic skills, time and punctuality, money and value, work skills, and home/community orientation. (AR 974).  Gabbitas notes Plaintiff's greatest strengths include his motor skills, while his lowest scores include his personal living skills. (AR 974). She goes on to state Plaintiff demonstrates moderately serious problem behaviors, internalized maladaptive behaviors, asocial maladaptive behaviors, and externalized maladaptive behaviors. (AR 974). Ultimately, Gabbitas opined that Plaintiff will need frequent support, much more than others his age, due to his very limited adaptive behaviors and problems behaviors. (AR 974).

### c.  The ALJ's Decision

The ALJ considered the assessments provided by Lloyd and Gabbitas together and

found both opinions to be unpersuasive, stating:

> In compliance with the Appeals Council's order, the undersigned has given due consideration to assessment provided by Daniel Lloyd, LSW, in February 2018. The extreme level of limitation indicated in the adaptive behavior assessments by Daniel Lloyd, LSW, in February 2018, and by Katherine Gabbitas, LMSW, in August 2020, are not supported by objective medical findings reported by these medical providers. The medical providers are one-time evaluators. There is no indication they had the opportunity to conduct a mental status exam or review other medical evidence contained in the record. The respondent is listed as Debra Merrill, the claimant's mother, and it is not clear whether the claimant actively participated in this assessment. In any event, the conclusions reached therein appear to be based on subjective reports. The conclusions are inconsistent with other evidence in the record, indicating relatively benign mental status findings since the current application date (6F/6, 23, 25; 13F/6-7, 8-9, 10-11, 17-18, 19-20, 21-22, 23-24; 14F/2; 22F/1-3, 4-6, 10-13, 14-16), and the lack of significant physical findings during the same period ("F" exhibits). Further, the conclusions are inconsistent with the claimant's activities of daily living, which have included the ability to handle personal care, prepare meals, shop, drive a car and truck, graduate from high school, work full-time in seasonal job as a farm laborer, work part-time at a furniture store, currently work part-time at a grocery store, mow the yard for two and one-half hours, shop in stores for lunch, food, or books, engage in hobbies and interests including reading, watching television, and playing games, which he did every day and did "very well," and spend time with other when he goes to school or work, or by texting (8D; 16D; 2E/4; 3E/4; 7E; 24E/2, 11; 27E; 8F/4; 13F/8; 18F/4; 20F/51; 22F/1-3, 10; testimony). As such, the undersigned finds these assessments are not persuasive.

(AR 572).

### d.  Analysis

Plaintiff argues the ALJ erred by failing to properly explain his evaluation of the supportability and consistency factors and, thus, the RFC determination is unsupported by substantial evidence. (Dkt. 14). Defendant maintains the ALJ reasonably evaluated the

medical opinions consistent with the applicable regulations, and that the ALJ's decision is supported by substantial evidence. (Dkt. 15).

      **i.**    **Supportability**

The ALJ found both Lloyd and Gabbitas' opinions to be unpersuasive because they were not supported by their own objective medical findings, the providers are one-time evaluators, there is no indication either provider conducted a mental status exam or reviewed other medical evidence in the record, the opinions are based on subjective reports, and the ALJ further questioned whether Plaintiff actively participated in either assessment as the respondent in both providers' opinions is listed as Plaintiff's mother. (AR 572). Plaintiff argues the ALJ's rationale for discounting both opinions was unsupported by substantial evidence, and that the ALJ's reasoning did not allow for meaningful review. (Dkt. 14 at 14-15). Defendant maintains the ALJ reasonably evaluated the medical opinions of Lloyd and Gabbitas consistent with the regulations, and the ALJ's conclusion was supported by substantial evidence. (Dkt. 15 at 2-3). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions. . . will be." 20 C.F.R. § 416.920c(c)(1).

The ALJ found the conclusions in Lloyd and Gabbitas' opinions appeared to be based on subjective reports. (AR 572). The Ninth Circuit has cautioned that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same

manner to opinions regarding mental illness" because reliance on the patient's self-report

"is the nature of psychiatry." *Buck v. Berryhill*, 869 F. 3d 1040, 1049 (9th Cir. 2017);

*Ferrando v. Comm'r of Soc. Sec. Admin.*, 449 Fed. Appx. 610, 612 n.2 (9th Cir. 2011)

("mental health professionals frequently rely on the combination of their observations

and the patient's reports of symptoms. . ."). The ALJ is especially critical of the

providers' reliance on the subjective reports here, because the respondent of the

assessment is listed as Plaintiff's mother instead of Plaintiff. *See Gallant v. Saul*, 783 F.

App'x 688, 691 (9th Cir. 2019) (finding discrediting a psychologist's opinion because it

was largely based on the claimant's subjective reports and reports of the claimant's

mother, without more, is not a legitimate reason for the ALJ to reject the opinion). A

mental health practitioner's reliance on subjective reports can be a legitimate basis for the

ALJ to discredit the opinion, if the ALJ provides legally sufficient reasons to discredit the

claimant's testimony. *Gallant*, 783 F. App'x at 691. Further, the ALJ may consider a

provider's reliance on subjective reports, if the ALJ provides some explanation in support

of their conclusion that the medical opinion was more heavily based on self-reports than

the objective medical evidence. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014);

*Reeve v. Kijakazi*, 2023 U.S. App. LEXIS 29925, at *7 (9th Cir. 2023) ("An ALJ may

discount a [] provider's opinion if it is based to a large extent on a discredited applicant's

self-reports and not on clinical evidence, but when an opinion is not more heavily based

on a patient's self-reports than on clinical observations, there is no evidentiary basis for

rejecting the opinion") (internal quotation marks omitted).

**MEMORANDUM DECISION AND ORDER - 12**

Though the ALJ discredited the testimony of Plaintiff and his mother, which Plaintiff does not challenge, the ALJ did not clearly address the weight either opinion gave to the subjective reports. *Reeve*, 2023 U.S. App. LEXIS, at \*7.  Rather, the ALJ found the providers' opinions "appeared to be based on subjective reports," but offered no explanation concerning whether the opinions were more heavily based on subjective reports versus objective evidence. Thus, the provider's reliance on subjective reports, without further explanation, is an insufficient basis for the ALJ to find the opinions unsupported. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Further, in evaluating the persuasiveness of Lloyd and Gabbitas' medical opinions, the ALJ notes that both providers are one-time evaluators. (AR 572). However, the one-time nature of the evaluation is also not a sufficient reason on its own to reject the providers' opinions. *See Williams v. Colvin*, 24 F. Supp. 2d 901, 914 (N.D. Cal. 2014) ("The fact of a one-time evaluation, without any analysis or assessment as to the nature and quality of that examination, is not a sufficient basis for the ALJ's decision to reject [the] opinion."). In this case, the ALJ does make note of the nature and quality of the assessments completed by Lloyd and Gabbitas, finding there was no indication that either provider had the opportunity to conduct a mental status exam of Plaintiff, or review other medical evidence contained the record. (AR 572); 20 C.F.R. § 416.920c(c)(3)(v). Here, it is unclear whether Lloyd or Gabbitas examined Plaintiff, reviewed other evidence in the record, or conducted an interview with Plaintiff prior to providing their opinions on his limitations. (AR 412-15, 572, 972-75).  While Plaintiff argues this finding could likewise

be attributable to other opinions that the ALJ found more persuasive, the ALJ specifically noted whether other providers had the opportunity to review all medical evidence in the record, as support for his findings. (AR 571, 575). The extent to which a medical provider is familiar with other information in the record is a relevant factor when deciding to give weight to a medical opinion, but it is only one of the factors the ALJ considers. 20 C.F.R § 416.927(c)(6); *see also Boghossian v. Astrue*, 2011 U.S. Dist. LEXIS 131032, at *4 (C.D. Cal. Nov. 14, 2011) (stating that a limited review of the record is not sufficient by itself to reject a [] physician's opinion).

However, the ALJ's other supportability findings, that the opinions were based on subjective reports and from one-time examiners, are not sufficient bases to reject the opinions. The Court therefore finds that the nature of both Lloyd and Gabbitas' assessments alone is not sufficient evidence to support the ALJ's supportability finding in his evaluation of both medical opinions, even if neither conducted a mental status exam nor reviewed other medical evidence in the record. Thus, the Court finds the ALJ erred in that his supportability evaluation was not supported by substantial evidence in the record.

Such error is harmless, however, where substantial evidence supports the ALJ's consistency finding. *See Woods*, 32 F. 4th at 792-93 n.4 (upholding the ALJ's evaluation of the medical opinion evidence where the ALJ did not make a supportability finding, but the consistency finding was supported by substantial evidence).

### ii.    Consistency

The ALJ found Lloyd and Gabbitas' opinions of Plaintiff's extreme level of

limitation to be inconsistent with other evidence in the record, the lack of significant physical findings, and Plaintiff's activities of daily living. (AR 572). Plaintiff argues the ALJ failed to explain the relevance of a lack of physical findings, "cherry-picked" the evidence of Plaintiff's mental status in the record and failed to explain how the activities he cited to were indicative of Plaintiff's ability to perform full time work. (Dkt. 14 at 14-19). Defendant contends the ALJ's conclusion was supported by substantial evidence in the record, and Plaintiff is simply asking the Court to reweigh the evidence. (Dkt. 15 at 4-5). As to "consistency", the proper analysis requires the ALJ to evaluate the extent to which a medical opinion is consistent with the medical or nonmedical evidence elsewhere in the record. *See Lewis v. Comm'r of Soc. Sec. Admin.*, 625 F. Supp. 3d 942, 950 (D. Ariz. Sept. 2, 2022).

Plaintiff initially argues that the ALJ failed to explain his finding that Lloyd and Gabbitas' opinions were inconsistent with the lack of physical findings in the record. (Dkt. 14 at 16). While it is not error for the ALJ to reject an opinion based on conflicting evidence in the record, the ALJ here failed to specify how Plaintiff's lack of physical findings are contradicted by the opinion of Lloyd and Gabbitas, who conducted only adaptive behavior testing. (AR 572); *Bayliss*, 427 F.3d at 1216; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (finding an ALJ may reject the opinion of a medical source by giving reasons germane to the opinion). However, where substantial evidence supports the ALJ's other reasons for finding the opinions to be unpersuasive, such error is "inconsequential to the ultimate nondisability determination" and is therefore harmless.

*Bray*, 554 F.3d at 1227 (finding an ALJ's reliance on an invalid reason to discredit claimant's testimony was "harmless error" where ALJ's other reasons for discrediting the testimony were valid). Here, as discussed in further detail below, the ALJ provided other valid reasons to discount Lloyd and Gabbitas' opinions.

First, the ALJ found the opinions were inconsistent with other evidence in the record, indicating Plaintiff's relatively benign mental status findings since the current application date. (AR 572). In rejecting Lloyd and Gabbitas' opinions, the ALJ cited to specific contradictive medical evidence in the record. (AR 572); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (The ALJ "may reject the opinion of a [] physician by reference to specific evidence in the medical record."). The ALJ cited to records that described Plaintiff as well groomed, dressed appropriate, pleasant, cooperative, attentive, goal oriented, and having good insight/judgment. (AR 438, 440). Other records cited by the ALJ noted providers found Plaintiff's focus and concentration good, Plaintiff was attending doctors' appointments alone, and stating that he feels his medications are working and doesn't believe any changes are necessary at this time. (AR 514, 516, 518, 525, 527, 538). The ALJ also cited to provider notes stating, "[d]espite executive functional deficits, [Plaintiff] exhibits age-appropriate ability to identify the need for and make improvements in treatment and to be actively involved in services", which supports the ALJ's consistency finding. (AR 538, 573). Also identified by the ALJ are Plaintiff's more recent treatment notes, where he denied any severe depression or anxiety, stated his depression and anxiety symptoms were much better when taking his medications, and

that his concentration has not been a problem since stopping his ADHD medication, as well as the provider noting that Plaintiff appeared alert, oriented, responsive to questions, had an understanding of the questions, and provided reasonable answers. (AR 572, 1022, 1025-26, 1031, 1035). The records identified by the ALJ are inconsistent with the opinions because they demonstrate Plaintiff's limitations are not as severe as Lloyd and Gabbitas' opinions submit. The Court finds the ALJ's discussion of the record is accurate and the ALJ's reasoning and conclusion is supported by substantial evidence.

Contrary to Plaintiff's assertion, the ALJ did not cherry pick the evidence regarding Plaintiff's relatively benign mental status exams, which were found to be inconsistent with Lloyd and Gabbitas' opinions. (Dkt. 14 at 17-18). The few records cited to by Plaintiff in support of this assertion include notes about Plaintiff's ongoing ADHD and autism symptoms, but also report that Plaintiff stated he was doing better over the past year and has been able to concentrate better. (AR 522). Plaintiff points to a specific mental status exam where the provider stated Plaintiff has an anxious affect and low to normal attention span, but in that same exam, the provider stated Plaintiff had "normal attention span and concentration ability" and that "appropriate mood and affect were seen on exam." (AR 523). Lastly, Plaintiff cites to records of LMSW Brinkley in support, and although she mentions Plaintiff has executive functional deficits, she also stated that he "exhibits age-appropriate ability to identify the need for and make improvements in treatment and be actively involved in services," which does not appear to be consistent with the opinions of Lloyd and Gabbitas. (AR 538, 412, 972). The records Plaintiff relies

upon cut both ways. Plaintiff's alternate interpretation of the medical evidence in the record is not a basis for remand. "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court therefore finds the ALJ's conclusion that the opinions of Lloyd and Gabbitas are inconsistent with many relatively benign mental status exams to be supported by substantial evidence in the record.

Further, the ALJ may consider the inconsistency between a physician's opinion and a claimant's daily activities as a specific and legitimate reasons for discounting that physician's opinion. *See Morgan v. Commissioner of the SSA*, 169 F.3d 595, 602 (9th Cir. 1999). The ALJ was not persuaded by Lloyd or Gabbitas' opinions about Plaintiff's adaptive skill limitations, finding the opinions to be inconsistent with Plaintiff's activities of daily living. (AR 572). The ALJ identified specific evidence in support of his finding that the extreme limitations opined by Lloyd and Gabbitas, including that Plaintiff's functional independence is very limited and he will need frequent support because of very limited adaptive behaviors and problem behaviors, were inconsistent with Plaintiff's daily activities of living. (AR 414, 974, 572). The ALJ thoroughly supported his conclusion by citing to numerous portions of the record, which support a finding that Plaintiff's limitations are not as extreme as indicated in the medical opinions. (AR 572).

For instance, the ALJ cited to Plaintiff's disability report stating that during his seasonal farm labor job he was working seven hour days, 5 days a week (AR 211), Plaintiff's work activity report stating he was working an average of 50 hours a week on

the farm (AR 220), and Plaintiff's functional report stating that he can prepare frozen meals, sandwiches, reheat leftovers, prepares meals for himself daily, mows the lawn for two and a half hours, shops for food and books, follows a recipe well, and does well with authority figures (AR 244-48). (AR 572). The ALJ also cited to evidence of Plaintiff's reports to providers that his transfer to a new school prior to graduation had gone well, he was doing well working on his grandfather's farm, and had plans to start college during the winter. (AR 516). Other records cited by the ALJ note that Plaintiff described his job at the furniture store as involving unboxing and assembling furniture, and then delivering it to a customer's home (AR 934), that Plaintiff plans to begin applying for customer service positions soon, such as at a gas station (AR 1022), that Plaintiff completed work through vocational rehab which included a two week internship cleaning a gym where his concentration was not a problem. (AR 572, 1031). The Court finds the ALJ's conclusion that Plaintiff's daily activities are inconsistent with the opinions of Lloyd and Gabbitas regarding Plaintiff's limitations is rational and supported by substantial evidence.

Plaintiff argues that his activities of daily living, including his part-time work, are not dispositive of his ability to work full time and that his "leisure activities" described by the ALJ do not compare to working a full-time job. (Dkt. 14 at 18-19). However, as the ALJ noted in his decision, he may consider any work activity, including part-time work, in determining whether a claimant is disabled. *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020). The Court finds the ALJ's decision that the opined extreme limitations are inconsistent with Plaintiff's ability to work as a seasonal farm laborer, work at a

**MEMORANDUM DECISION AND ORDER - 19**

furniture store, and work at a grocery store are supported by substantial evidence. (AR 572). While "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations", Plaintiff's daily activities described by the ALJ, especially his work history, go far beyond Plaintiff's portrayal of leisure activities that have no relation to his ability to perform a full-time job. (AR 572); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ reasonably found these activities to be inconsistent with the extreme adaptive limitations opined by Lloyd and Gabbitas. The Court therefore finds that there is no harmful error in the ALJ's consistency finding. Accordingly, the ALJ's evaluation of the medical opinions was free from harmful error.

## CONCLUSION

Based on the foregoing, the Court finds the ALJ erred by failing to provide substantial evidence in his discussion of the supportability factor when evaluating the medical opinions of Lloyd and Gabbitas. However, that error was ultimately harmless because the ALJ appropriately analyzed the consistency factor and therefore the error was inconsequential to the disability determination. *Woods*, 32 F. 4th at 792-93 n.4. Accordingly, the Court finds the ALJ's evaluation of Lloyd and Gabbitas' opinions was supported by substantial evidence in the record.

The ALJ's conclusion that Plaintiff has the ability to perform a full range of work at all exertional levels with non-exertional limitations is also supported by substantial evidence in the record. (AR 565). *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (In formulating Plaintiff's RFC, the ALJ is not required to include limitations that

are not supported by substantial evidence); *Biestek*, 139 S.Ct. at 1154 (holding the

substantial evidence threshold is "not high," as "[i]t means—and means only— 'such

relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'"). Therefore, the Court will affirm the decision of the Commissioner.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED** that:

1)      The decision of the Commissioner of Social Security be **AFFIRMED**;

2)      Judgment be **ENTERED** consistent with the above in favor of Defendant.

DATED: February 2, 2024

_____

Honorable Debora K. Grasham
United States Magistrate Judge